UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD LEE SMITH, JR.,

        Plaintiff,                    Case No. 2:22-cv-11586

                                                 District Judge Nancy G. Edmunds

v.                                        Magistrate Judge Anthony P. Patti

BISCHAN HASSUNIZADEH, *et al.*,

        Defendants.

_____/

# REPORT AND RECOMMENDATION TO GRANT MDOC DEFENDANTS BYRNE, MILLER & ROACH'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 26)

**I.**    **RECOMMENDATION**:  The Court should **GRANT** MDOC Defendants Byrne, Miller & Roach's motion for summary judgment on the basis of exhaustion (ECF No. 26).

**II.**    **REPORT:**

    **A.**    **Background**

On July 8, 2022, while located at the Michigan Department of Corrections (MDOC) G. Robert Cotton Correctional Facility (JCF), Plaintiff Edward Lee Smith, Jr. initiated this lawsuit *in pro per* against multiple defendants.  (ECF No. 1.)  The Court has granted his application to proceed *in forma pauperis*.  (ECF Nos. 4, 5.)  Plaintiff has kept the Court apprised of his address and is currently

1

located at the MDOC's Parnall Correctional Facility (SMT).  (ECF Nos. 7, 39; *see also* www.michigan.gov/corrections, "Offender Search.")

### B.    Eighteen Remaining Defendants

On August 24, 2022, Judge Edmunds entered an opinion and order, which dismissed the complaint against the MDOC but also provided Plaintiff "**sixty (60) days** from the date of this order to specify the names of the defendants he wishes to sue and to provide the Court with the addresses of these defendants."  (ECF No. 8, PageID.24 (emphasis in original).)

Plaintiff's timely response listed thirty Defendants.  (ECF Nos. 9, 10.)[1]  On October 18, 2022, Judge Edmunds entered another opinion and order, this time:

(1)    dismissing the complaint as to the ten Henry Ford Hospital Defendants (Hassunizadeh, Zeeshan, Zuger, Kazem, Chiu, Ivy, Lacey Wilson, Fulmerhouser, Bugbee, and Evans);

(2)    dismissing the complaint against two defendants (M. Caran and K. Chauris) because they had not been fully identified so that service could be effectuated; but,

(3)    directing the USMS to serve the complaint upon the eighteen remaining named Defendants (Byrne, Price, Miller, Erickson, Baghal, Efrusy, Rogers, Lander, Bahner (*i.e.*, Bhavsar), Sperling, Varney-Herr, Robert Lacy, Roach, Griffith, Yarid, Chester, Hill, and Remus).

---

[1] These responses are the same, except the latter contains a six-page "Attachment 1."  (*Compare* ECF No. 9, PageID.25-29; *with*, ECF No. 10, PageID.30-41.)  And, while they appear to list thirty-two (32) Defendants, Zuger is listed twice (*id*., ¶¶ 3. 16) and one other paragraph seemingly describes the location(s) of certain Defendants (*see id*., ¶ 17).

(ECF No. 11; *see also* ECF Nos. 22, 23, & 54.)

According to Plaintiff's list, the remaining eighteen Defendants are associated with the MDOC's Duane Waters Health Center (DWH), the Charles E. Egeler Reception & Guidance Center (RGC), the Carson City Correctional Facility (DRF), and/or the G. Robert Cotton Correctional Facility (JCF).  (ECF No. 10, PageID.31-32.)  To date, ten defendants have appeared via counsel.  (ECF Nos. 22, 23, 53, & 54 [Bahner (*i.e.*, Bhavsar), Chester, Hill, Robert Lacy, Yarid], 24 [Byrne, Miller, Roach], 27 & 28 [Sperling], 46 [Lander].)  Eight defendants – *i.e.*, Price, Erickson, Baghal, Efrusy, Rogers, Varney-Herr, Griffith, & Remus – have yet to appear.  (*See* ECF Nos. 29-30, 32-37, 38, 41, 50, 52.)

## C.    Defendants Byrne, Miller & Roach's Motion for Summary Judgment on the Basis of Exhaustion (ECF No. 26)[2]

Although this case was originally assigned to Judge Edmunds and Judge Grey, it has recently been reassigned from Judge Grey, who was handling pretrial matters, to me, and then referred to me for pretrial matters.  (ECF Nos. 21, 42.)  Currently before the Court is MDOC Defendants Byrne, Miller, and Roach's

---

[2] Of the ten Defendants who have appeared, only three are movants in the instant motion.  The status of the other seven will be addressed separately, via:  (a) Lander's motion to dismiss (ECF No. 47), as to which a response was due on April 24, 2023 (ECF No. 48); and, (b) Bahner (*i.e.*, Bhavsar), Chester, Hill, Robert Lacy, Sperling, and Yarid's counsel's motion for withdrawal of attorney and for 120-day stay (ECF No. 44).

February 1, 2023 motion for summary judgment on the basis of exhaustion (ECF
No. 26), as to which Plaintiff has filed a response (ECF Nos. 40, 49),[3] and the
movants have filed a reply (ECF No. 51).[4]  This motion is ready for decision.

### D.    Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary
judgment if the movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  A fact is material if it might affect the outcome of the case under governing

---

[3] On February 28, 2023, Plaintiff filed what was docketed as an "objection" to
Defendants' motion (*see* ECF No. 40, PageID.149-161), attached to which was a
1-page "affidavit" (*id.*, PageID.162).  On March 13, 2023, under the impression
that a response had not yet been filed, I entered an order setting the response
deadline for April 3, 2023.  (ECF No. 43.)  Plaintiff's March 29, 2023 "response"
consists of the same February 15, 2023 response, albeit missing one page (*see* ECF
No. 49, PageID.223-234), the same February 15, 2023 "affidavit" (*id.*,
PageID.221), two MDOC disbursement authorizations dated February 15, 2023
(*id.*, PageID.219-220), and a two-page "ex-parte motion" dated March 21, 2023
(*id.*, PageID.216-217).  To the extent Plaintiff sought sanctions for Defendants'
"actions, to impede, delay, obstruct this litigation . . . [,]" because "they did this
with my grievances too[,]" (*id.*, PageID.217 ¶ 3), the mistaken impression that a
response had not yet been filed is the Court's – not Defendants' – error.  To the
extent he believes that Defendants' filing of the instant motion had these nefarious
purposes, he is mistaken, as their motion has merit and is appropriate at this
juncture.

[4] To the extent Plaintiff takes issue with the fact that Defendants did not seek
concurrence (ECF No. 40, PageID.153 ¶ 7), Defendants appropriately explain they
did not seek concurrence, because Plaintiff "is an incarcerated prisoner proceeding
pro se."  (ECF No. 26, PageID.96; ECF No. 51, PageID.246.)  *See* E.D. Mich. LR
7.1(a)(2)(D) ("concurrence in the motion has not been sought because the movant
or nonmovant is an incarcerated prisoner proceeding pro se.").

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations

omitted).  Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary

judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

### E.    Analysis

#### 1.    The pleading

Plaintiff's complaint is signed under penalty of perjury.  (ECF No. 1, PageID.4)  28 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury"). Therefore, it may be considered as evidence on summary judgment.  *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) ("28 U.S.C. § 1746 allows for 'unsworn declarations under penalty of perjury' to support any matter that legally requires an affidavit to support it.").  *See also Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 767 (6th Cir. 2018) ("This declaration is not competent summary-judgment evidence because it fails to comply with either Federal Rule of Civil Procedure 56(c)(4) or 28 U.S.C. § 1746: It is neither signed, dated, nor made under penalty of perjury.").

### a.    Statement of Facts

By way of background, Plaintiff is serving a sentence imposed in state court on May 10, 2021.  *See* Case No. 20-015538-FH (Berrien County).  Plaintiff alleges he "was diagnosed with having a weak heart."  (ECF No. 1, PageID.3.)  He also alleges that, on June 6, 2021, he received "multiple diagnos[e]s[,]" including "asthma, COPD [chronic obstructive pulmonary disease], CHF [congestive heart failure], nonischemic cardiomyopathy, apical mural thromb[i], diabetes, HTN [hypertension], with hyperlip[i]d[e]mia[.]"  (*Id.*)  Plaintiff alleges he "had [CHF], h[ea]rt failed . . . [,]" and it seems he had an ICD (implantable cardioverter-defibrillator) inserted on July 7, 2021.  (*Id.*, PageID.3; *see also* ECF No. 10, PageID.40.)  Then, Plaintiff alleges, it was taken out "shortly after . . . on approximately September 17, 2021, due to [him] having an infection and weak heart."  (*Id.*, PageID.3.)  Plaintiff alleges he "was sent from (DWH) to Henry Ford Hospital is what I remember where my defibrillator was taken out that caused infections."  (*Id.*)[5]

---

[5] Throughout his pleading, Plaintiff refers to Attachments 1, 2, 3 & 4 (*see* ECF No. 1, PageID.3-5), but the complaint does not have any attachments.  Nonetheless, the Court acknowledges that, elsewhere in the record, Plaintiff has attached a six-page "Attachment 1," which describes the alleged events of July 8, 2021 to September 16, 2021 and also mentions some Defendants, *e.g.*, Price, Griffith, Roach, Robert Lacy, Baghal, Yarid, and Remus.  (*See* ECF No. 10, PageID.35-40.)

Plaintiff also states that "[t]he names of each defendant involved and how [they are] involved" are as follows:  (1) Bischan Hassunizadeh was the referring physician; and, (2-4) Rebecca Byrne, R.N., Lacey Wilson, N.P., and J. Fulmerhouser were "providers of [hi]s care during having surgery, prior to having surgery and then after having surgery."  (*Id*., PageID.5.)  Of these, only Defendant Byrnes is still a party.  According to Plaintiff, a "[g]rievance was filed to best of [his] ability," and he "tried to resolve with staff but [doesn't] remember much at all . . . ."  (*Id*.)

### b.    Statement of claims

Plaintiff's statement of claims consists of the following eight (8) paragraphs:

1.    My serious medical needs not being met has caused me physical injuries that violate[] my Eight[h] Amendment rights of the United States Constitution.  The surgery defibrillator that was taken out that caused an infection and the doctor stating I need a defibrillator back in my chest alone with the denial of [MDOC] and its contracted medical providers ignoring my prior pleas for help until my chest was infected shall warrant my claims of cruel and unusual punishment.

2.    As Plaintiff my necessary medical care has been denied because the care the doctor's [sic] individually gave to me after concluding their examinations and given "MDOC" employees doctors orders, the contracted medical providers employees at DWH while I was calling for medical attention for my serious medical needs of my chest was hurting so bad it was to the point I could not breath[e], other prisoners w[ere] ye[l]ling to officers to come see me and call medical nurses or doctors to assist me.

9

3.      The officer John Doe came and s[aw] me and told me to put on
        my cloth[e]s and . . . it could have clearly been seen that I could
        not [have] been able to do[] [it] by myself due to my failing
        health condition then at that time.  The correctional officers had
        been denying me serious medical needs for my necessary need
        medical care, that's needed still to this day based on MDOC
        rigid prison policy and ignoring doctors['] orders.

4.      The PL[RA] shall not cause a problem about confidentiality as
        my claims [are] for punitive damage, compensatory damages  . .
        . I can show that I was physically hurt – still [am] hurting and
        have the scares for life.  I was immediately when medical
        nurses and doctors was alerted then when seeing me was
        wrapped up in [gauze], ban[d-]aids put on me due to bad
        infection surrounding the area of my recently had surgery and
        defibrillator was then ordered to be immediately taken out
        after[.]  I've prior suffered long periods of time in pain.

5.      The defendants in this complaint at time[s] ignored and at times
        waited for hours while I was needing help and told me to . . .
        "put your f[-]ing blues on[.]"  [T]hat was very rude and that
        could have got a person upset that had my type of surgery and
        was g[iven] doctor orders not to get upset [be]cause I could
        have died if [I] did.  The officers w[ere] suppose[d] to watch
        o[ver] me by doing rounds every half hour but did not do
        rounds every half hour as was called for doctor did order[].  I
        asked for help to write grievance but got none.

6.      The officers at "MDOC" [DRF] . . . only did rounds every 3 to
        4 hours, and (DWH) which for all the above reasons mentioned
        the [MDOC] medical providers through Corizon in concert with
        prison officials violated constitutional standards, from a state
        and federal standpoint.  My rights violated – violated Michigan
        Constitution for the "MDOC" contracted medical providers not
        properly screening my health problems and poorly
        administering prison health services, the prisons and medical
        agencies denied and unreasonably delayed my access to proper

medical care then and still to this day in violation of the
Eight[h] Amendment and they still are because:

7.   The defibrillator was taken out that caused the infection from
the first surgery that prior failed which rendered me having life
threaten circumstances experienced causing me psychological
new conditions.  The professional treatment g[iven] that caused
my life threatening circumstances make[s] me now fear for my
life and refuse to get any other offered surgery done within my
having to live in a prison setting due to my prior experience
with "MDOC" medical service Corizon contracted employees
for prisons – prisoners medical serious health care needs.  The
unknown Mr. John Doe, who is [an] African American prison
guard who made the call to medical that was very rude when I
was immediately taken back to hospital[,] acted in complete
"deliberat[e] indifference" to my failed heart surgery needs by
not immediately calling for medical help until my n[ei]ghboring
peer-prisoners started scre[a]ming for guards to come assist me
due to my failing health clearly seen by them that happen then.
My health failing was clearly being ignored then that placed my
life in danger then that now cause[s] me to fear for my life due
to [MDOC] and their medical contracted providers not being
able to properly provide for my serious medical needs then and
now at this time.

8.   Recently I was threaten[ed] to take medication for "scabies"
without being given any information [in advance] about the
dangers could be when taken such medication . . . .  I wanted to
ask about the medication but was told I would be placed in
(JCF) segregation.  Interestingly, prior to tak[ing] medication[,]
I s[aw] another prisoner refused only to take the medication and
get shot with a taser stun[] gun which deter[r]ed me from
asking any questions or refusing to take medication.  I take
insulin[] twice a day before I eat breakf[a]st and dinner, and I
[am] suppose[d] to take insulin[] three times a day after each
meal.  I was not told that prisoners with immune systems [that
are] compromised should not take medication I was forced to
take until after.

(ECF No. 1, PageID.3, 6-9.)

### c.      Relief

Plaintiff wants the Court "to rule that [MDOC] is unable to provide for [his] medical serious needs now, has been in the past, and order them to pay monetary damages in punitive, compensatory, in a[n] amount that has been paid to prisoners and citizens prior but in excess of what was paid out prior to deter the actions of those involved and those to come employees of "MDOC," and contracted medical providers."  (ECF No. 1, PageID.3-4.)  Plaintiff also wants the Court to "[r]ule that the not annually checking the health of [his] weak heart after such surgery is deliberately ignoring [his] serious medical needs," to "appoint counsel for trial urgently[,]" and to "[d]o what this Court deems fit, as we can't put [a] price on life."  (*Id.*, PageID.4.)

### 2.      Exhaustion of administrative remedies[6]

---

[6] As best the Court can tell from the above-quoted portions of Plaintiff's pleading, Byrne is the only movant currently before the Court who is expressly identified in the complaint.  (ECF No. 1, PageID.5.)  And, even giving Plaintiff the benefit of the doubt for his court-ordered October 17, 2022 response:  (a) it merely identifies movant Rebecca Byrne *as located* at DWH, movant Misty Miller as an L.P.N., and movant Adria Roach, R.N. *as located* at JCF (ECF No. 10, PageID.31-32 ¶¶ 9, 13, 25); and, (b) the only movant mentioned in the six-page "Attachment 1" seems to be Roach, along with a handwritten copy of the SOAP (subjective, objective, assessment and plan) notes from September 7, 2021 (ECF No. 10, PageID.36).  Although Defendants Byrne, Miller, and Roach have not filed a motion to dismiss for "failure to state a claim upon which relief can be granted[,]"  Fed. R. Civ. P. 12(b)(6), they may be summarily dismissed alternatively under 28 U.S.C. § 1915 ("Proceedings in forma pauperis") for the reasons stated in this footnote.  *See* 28

Byrne, Miller, and Roach argue that Smith "failed to properly exhaust administrative remedies on his claim against MDOC Defendants . . . ." (ECF No. 26, PageID.101; *see also id*., PageID.105.) "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91 (footnote omitted).

### a.  MDOC PD 03.02.130 ("Prisoner/Parolee Grievances")

The MDOC's 3-step prisoner/parolee grievance procedure is set forth in MDOC PD 03.02.130 (effective March 18, 2019). (ECF No. 26-2.) Importantly, this policy directive provides: "[c]omplaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative

---

U.S.C. § 1915(e)(2)(B)(ii) ("fails to state a claim on which relief may be granted[.]").

remedies only when filed as a grievance *through all three steps* of the grievance process in compliance with this policy."  (*Id.*, PageID.116 ¶ C (emphasis added).)

"Under the Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved" in their initial grievance.'"  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  *See also* MDOC PD 03.02.130 ¶ S ("[d]ates, times, places, and names of all those involved in the issue being grieved are to be included.") (ECF No. 26-2, PageID.119).  The MDOC's prisoner/parolee grievance policy directive also states:

> Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs.  If the issue is not resolved, the grievant may file a Step I grievance.  The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

MDOC PD 03.02.130 ¶ Q (ECF No. 26-2, PageID.119).  *See also* MDOC PD 03.02.130 ¶ W (ECF No. 26-2, PageID.120.)[7]

---

[7] In his response, Plaintiff contends MDOC 03.02.130 intentionally omits "staff corruption, obstruction, misconduct, misrepresentation by its employee."  (ECF No. 40, PageID.159 ¶ 23.)  The Court can only assume Plaintiff is referring to the provision that the Grievance Coordinator shall reject "issue[s] fall[ing] within the jurisdiction of Internal Affairs in the Office of Executive Affairs."  MDOC PD 03.02.130 ¶ J(4).  (ECF No. 26-2, PageID.117.)

### b.   RGC-21-10-3223-28E

Byrne, Miller, and Roach argue that Smith "did not pursue, through Step III,

any grievances against MDOC Defendants before he filed his complaint[,]" (ECF

No. 111), *i.e.*, before July 8, 2022.  "The plain language of [42 U.S.C. § 1997e(a)]

makes exhaustion a precondition to filing an action in federal court . . . ." *Freeman*

*v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (emphasis added).  A prisoner

"cannot exhaust these remedies during the pendency of the action." *Roberts v.*

*Lamanna*, 45 F. App'x 515, 516 (6th Cir. 2002) (citing *Freeman*, 196 F.3d at 645).

As best the Court can tell, Plaintiff mentions only one grievance in his

response, *i.e.*, RGC-21-10-3223-28E.  (ECF No. 40, PageID.162 ¶ 4; ECF No. 49,

PageID.221 ¶ 4.)  The evidence shows that, on October 1, 2021, Plaintiff

completed an MDOC Step I grievance form – RGC-21-10-3223-28E – based on

the alleged events of September 9, 2021.  (ECF No. 51-1, PageID.252-253.)[8]

Plaintiff described his attempt at resolution as having occurred on September 9 and

September 10, but alleges he "was told that this was not something that they could

---

[8] According to Plaintiff's previously filed six-page "Attachment 1," September 9,
2021 is a date on which he was seen for complaints of "chest pain still w[ith] deep
breaths" and "shortness of breath."  (ECF No. 10, PageID.35.)  Yet-to-appear
Defendant Price seems to have noted that Plaintiff's medical history included:  (1)
nonischemic cardiomyopathy with ejection fraction (EF) 20%; (2) pain since July
2021 automatic implantable cardioverter defibrillator (AICD) placement; and, (3)
follow-up appointment canceled.  (*Id.*)

or would address[.]"  (*Id.*)  When asked to state his problem clearly, Plaintiff

elaborated:

> I was sent to DWH after complaining about chest pains.  After a while
> I was transfer[r]ed to Henry Fords, who put a [defibrillator] and kept
> me for a few days to observe me.  Then they sent me back to facility.
> Then af[t]er that I started bruising up in the chest area[,] and they
> again sent me to Henry Ford.  They told me that I might have an[]
> infection and gave me [antibiotics].

(*Id.*)

RGC-3223 was received at Step I on October 5, 2021.  (*Id.*)  That same day,

Grievance Coordinator Hawkins rejected the grievance, explaining that Plaintiff

"ha[d] exceeded [his] time limits . . ." and "at the same time provided no

reasonable circumstance beyond [his] control that would have prevented [him]

from filing th[e] grievance in a timely fashion."  (*Id.*, PageID.254-255.)  *See*

MDOC PD 03.02.130 ¶ J(5) ("The grievance is filed in an untimely manner[,]" but

it "shall not be rejected if there is a valid reason for the delay[,] e.g., transfer.")

(ECF No. 26-2, PageID.117).  The grievance form reflects it was returned to

Plaintiff on October 8, 2021.  (ECF No. 51-1, PageID.252.)

The movants have submitted the April 11, 2023 sworn affidavit of

Grievance Coordinator Hawkins, who attests:  "When Smith was at RGC, he filed

only one Step I grievance [RGC-3223] . . . ."  (ECF No. 51-1, PageID.251 ¶ 5.)

Hawkins also attests that "Smith did not appeal RGC-3223 to Step II."  (*Id.*)

Moreover, the movants have also submitted Plaintiff's MDOC Prisoner Step III

Grievance Report for the period January 1, 2016 to present (*i.e.*, November 21, 2022), which is blank, indicating that "[a] search of this database has been performed for the time period listed on the title of this report and no records were found." (ECF. No. 26-3, PageID.125.)

Accordingly, the movants have satisfied their "initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry*, 651 F.3d at 486.

### 3.    Plaintiff's response

"'[T]he burden [now] shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC*, 256 F.3d at 453 (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). Preliminarily, as for whether the Court should treat Plaintiff's filings as evidence, Plaintiff's responses conclude with "pursuant to:  28 U.S.C. § 1746." (ECF No. 40, PageID.161; ECF No. 49, PageID.217, 234.) Merely citing the statute does not establish that the response's contents are "subscribed by [Plaintiff], as true under penalty of perjury, and dated, in substantially the [required] form[.]" 28 U.S.C. § 1746. On the other hand, Plaintiff's attached "affidavit," dated February 15, 2023, concludes with:  (1) the phrase "this information is true to the best of my belief and knowledge under the penalties of perjury" and (2) "pursuant to:  28 U.S.C. § 1746." (ECF No. 40, PageID.162; ECF No. 49, PageID.221.)  This substantially satisfies Section 1746's required form; therefore, the "affidavit" may be treated as an unsworn declaration

under penalty of perjury, *i.e.*, may be considered as evidence on summary judgment.

That said, in his response, Plaintiff makes varied arguments in opposition to the instant motion, which can be classified into three categories.

### a.    Imminent danger

With reference to his heart conditions, surgery, defibrillator, and infection . . . [,]" Plaintiff seems to argue that Defendants' alleged actions place him in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). (ECF No. 40, PageID.150 ¶ 3, 155 ¶ 13; *see also id*., PageID.154 ¶ 10(4).)  He claims that "<u>no</u> grievance could have resolved [hi]s irreparable injuries . . . ." (ECF No. 40, PageID.155 ¶ 13 (emphasis added).)

However, "[t]he PLRA does not excuse exhaustion for prisoners under imminent danger of serious physical injury." *Arbuckle v. Bouchard*, 92 F. App'x 289, 291 (6th Cir. 2004). *See also Boulding v. Michigan Dep't of Corr.*, No. 13-14325, 2015 WL 136195, at *2 (E.D. Mich. Jan. 6, 2015) (Whalen, M.J.) ("The PLRA does not contain an exception to the exhaustion requirement for 'exigent circumstances,' be they medical exigencies or otherwise."), *report and recommendation adopted*, No. 13-14325, 2015 WL 1510446 (E.D. Mich. Mar. 24, 2015) (Cleland, J.).  "[U]nlike Section 1915(g), Section 1997e(a) does not contain an 'imminent danger' exception, and Section 1915(g)'s 'three strikes rule' is not at

issue here." *Coleman v. Washington*, No. 2:18-CV-13171, 2020 WL 6389832, at

*7 (E.D. Mich. June 11, 2020) (Patti, M.J.), *report and recommendation adopted*,

No. 18-13171, 2020 WL 4932110 (E.D. Mich. Aug. 24, 2020) (Tarnow, J.).  *See*

*also Ross v. Blake*, 578 U.S. 632, 648 (2016) ("Courts may not engraft an

unwritten 'special circumstances' exception onto the PLRA's exhaustion

requirement.").  (ECF No. 40, PageID.156 ¶ 15(4); *see also id*., PageID.157 ¶ 18.)

Indeed, the immediacy of the grievance deadline is designed to administratively

address problems and provide expeditious relief or amelioration in meritorious

cases *without* having to go through time-consuming litigation.  But, for that

administrative process to work, a claimant must comply with its filing

requirements.

### b.  Availability of administrative remedies

Plaintiff notes the administrative grievance process is "unavailable" when

"prison administrators thwart inmates from taking advantage of a grievance

process through machination, misrepresentation, or intimidation."  *Ross v. Blake*,

578 U.S. 632, 644 (2016).  (ECF No. 40, PageID.150-151 ¶ 4; *see also id*.,

PageID.157 ¶ 18, 158 ¶¶ 20-21.)  He also notes "the possibility that prisons might

create procedural requirements for the purpose of tripping up all but the most

skillful prisoners[.]"  *Woodford*, 548 U.S. at 102.  (ECF No. 40, PageID.151 ¶ 4.)

Accordingly, the Court should consider whether Plaintiff "has demonstrated that a

genuine issue of material fact exists as to whether [Defendants (*i.e.*, Byrne, Miller or Roach)] improperly prevented [Plaintiff] from exhausting his administrative remedies." *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 578 (6th Cir. 2014), *aff'd and remanded sub nom. Simmons v. Himmelreich*, 578 U.S. 621 (2016).  (ECF No. 40, PageID.152 ¶ 4.)

### i.     September 9, 2021 – October 1, 2021 (JCF / DWH / RGC)

Plaintiff contends he is "not required to request . . . grievances 1, 2, 3, 4, or 5 times when the MDOC will not provide one to exhaust all 'available' administrative remedies."  (ECF No. 40, PageID.150 ¶ 3 (emphasis in original); *see also* ECF No. 40, PageID.154 ¶ 10(2); *id*., PageID.159 ¶ 23.)  He claims he was at JCF (in "TA 34" and "B-Unit") and at DWH (on the 3rd Floor) and video will show him "trying to get a grievance from staff over (5) five attempts to exhaust all 'available' administrative remedies . . . ."  (ECF No. 40, PageID.155 ¶ 12.)

Plaintiff declares that, on September 9, 2021, while housed at JCF, he "made over (5) five attempts requesting JCF grievances, where unit officers are on video NOT providing them, or assisting [him] with a life threatening heart condition, that was an immin[ent] danger under 42 U.S.C. § 1915(g)[,]" and that he "also attempted to get grievances from MDOC [DWH], that were never provided, or R.G.C."  (ECF No. 40, PageID.162 ¶¶ 1-2; ECF No. 49, PageID.221 ¶¶ 1-2.)

Assuming this declaration to be true, <u>Plaintiff should not have had to ask five (5)</u> <u>times for a Prisoner/Parolee Grievance form (CSJ-247A)</u>.  MDOC PD 03.02.130 ¶¶ S, W (ECF No. 26-2, PageID.119-120).

### ii.   October 1, 2021 – October 8, 2021 (RGC-3223)

However, even assuming Plaintiff's efforts to obtain a CSJ-247A form were thwarted from September 9, 2021 to October 1, 2021, he eventually completed an MDOC Step I grievance form on October 1, 2021 – apparently while located at DWH (Lock No. 433-E) – *based on the alleged events of September 9, 2021*. (ECF No. 51-1, PageID.252-253 [RGC-21-10-3223-28E].)  According to the movants, "[t]he fact that Smith was able to file RGC-3223 means that the grievance process was available to him during the relevant time-period."  (ECF No. 51, PageID.247.)

Plaintiff declares that, on October 1, 2021, he "yet again attempted to file a grievance to exhaust all 'available' administrative remedies, and the staff acted in bad-faith to th[war]t my exhaustion."  (ECF No. 40, PageID.162 ¶ 3; ECF No. 49, PageID.221 ¶ 3.)  But, the evidence indicates Plaintiff's grievance was received at Step I – *i.e.*, by RGC's Grievance Coordinator – on October 5, 2021, rejected as untimely that same day, and returned to Plaintiff on October 8, 2021.  (ECF No. 51-1, PageID.252-255.)  (*See also* ECF No. 40, PageID.162 ¶ 4; ECF No. 49, PageID.221 ¶ 4.)

As noted above, the October 5, 2021 grievance rejection letter explained that Plaintiff "ha[d] exceeded [his] time limits . . ." and "at the same time <u>provided no reasonable circumstance beyond [his] control</u> that would have prevented [him] from filing th[e] grievance in a timely fashion." (*Id*., PageID.254-255 (underline added).) <u>At that point, Plaintiff's recourse was to challenge the rejection by way of an appeal to Step II (using Form CSJ-247B)</u>, because the MDOC's grievance policy expressly provides:  "A grievance whose grievance is rejected may appeal the rejection to the next step as set forth in this policy.  A new grievance shall not be filed regarding the rejection."  MDOC PD 03.02.130 ¶ I (ECF No. 26-2, PageID.117).

### iii.    Steps II & III (RGC-3223)

Plaintiff's appeal of RGC-3223 to Step II was due on or about October 18, 2021, *i.e.*, "within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due, including any extensions."  MDOC PD 03.02.130 ¶ DD.  Plaintiff contends he placed his "Step I, II & III appeals" in the JCF "outgoing mail" – which he claims can be established by video (ECF No. 40, PageID.159-160 ¶ 27) – at which point the "mailbox rule" applies:

> The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox-he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's

22

> assertions that he delivered the paper on a different date. Because
> reference to prison mail logs will generally be a straightforward
> inquiry, making filing turn on the date the *pro se* prisoner delivers the
> notice to prison authorities for mailing is a bright-line rule, not an
> uncertain one.

*Houston v. Lack*, 487 U.S. 266, 275 (1988).  (ECF No. 40, pageID.152-153 ¶ 5.)[9]

He also contends staff "t[ook] grievances out of [the] mail . . . ."  (ECF No. 40,

PageID.159 ¶ 23; *see also id*., PageID.160 ¶ 27.)

Plaintiff declares "under the penalties of perjury[,]" and, seemingly with

reference to RGC-21-10-3223-28E, that:

> [He] filed Step II & Step III appeals that were through MDOC mail
> box that were impeded, obstructed, th[war]ted by staff [corruption], . .
> . is intentionally misleading, misrepresented, inaccurate to my
> multiple attempts to exhaust all "available" administrative remedies[.]
> [T]hey have provided no grievance filed!

(ECF No. 40, PageID.162 ¶ 5; ECF No. 49, PageID.221 ¶ 5.)  *See also* 28 U.S.C. §

1746.  However, this paragraph of the declaration is light on details, such as the

---

[9] Defendants characterize this argument as Plaintiff asserting "he exhausted his
administrative remedies through Step III once he submitted his grievance to Step
III . . . [,]" as to which they respond that "[e]xhaustion under the MDOC grievance
policy requires completion *through* Step III."  (ECF No. 51, PageID.245.)
Defendants are correct on this point.  *See, e.g.*, *Cavin v. McBride*, No. 4:20-CV-
12470, 2023 WL 1771170, at *9 (E.D. Mich. Jan. 4, 2023) (Patti, M.J.) ("The
administrative review process is not complete until a prisoner receives the Step III
response."), *report and recommendation adopted*, No. 20-12470, 2023 WL
1767753 (E.D. Mich. Feb. 3, 2023) (Kumar, J.).  Nonetheless, this report interprets
Plaintiff's argument somewhat differently, namely that Plaintiff lost control of his
appeals once they were submitted.  (*See* ECF No. 40, PageID.160 ¶ 27.)

dates on which he submitted Step II and Step III appeals, the attachment of a

written log to establish the dates appeals were submitted, etc. Notwithstanding

Plaintiff's assertions that he submitted grievance appeals by prison mail and that

prison staff removed grievances from the mail, "'[c]onclusory allegations and self-

serving affidavits, without support in the record, do not create a triable issue of

fact' and are insufficient to withstand a motion for summary judgment[.]" *Mav of*

*Michigan, Inc. v. Am. Country Ins. Co.*, 289 F. Supp. 2d 873, 875 n.3 (E.D. Mich.

2003) (Hood, J.) (quoting *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 354 (7th Cir.

2002)). *See also Freeman v. Learning Care Grp.*, No. 18-CV-13720, 2019 WL

2433411, at *1 (E.D. Mich. June 11, 2019) (Steeh, J.) ("The court is cognizant that

a self-serving affidavit, without support in the record, does not create a triable issue

of fact."). Moreover, Plaintiff asserts in his response that Defendants are

"conceal[ing] that they are on 'video' th[war]ting exhaustion," and "acting in bad-

faith concealing material video . . . [,]" and suggests that the Court "should have

viewed the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S.

372, 381 (2007). (ECF No. 40, PageID.154 ¶ 10(1), PageID.156 ¶ 15(2).) Yet, to

the extent Plaintiff seeks video from an MDOC facility – such as RGC (where

movants seemingly are or were located) – to prove his point, he could have done so

by serving an appropriate request for production consistent with Fed. R. Civ. P. 34,

after which he could have filed a motion to compel consistent with Fed. R. Civ. P.

37 if Defendants did not respond appropriately.[10]  Claiming that a video will show

something favorable to one's position, without presenting the video itself, is of no

evidentiary value and runs contrary to the rules on hearsay and best evidence.  Fed.

R. Evid. 802, 1002 ("An original writing, recording, or photograph is required in

order to prove its content unless these rules or a federal statute provides

otherwise.").[11]  Finally, while Plaintiff's "affidavit," *i.e.*, his declaration, mentions

video of attempts to get grievance forms (*see* ECF No. 40, PageID.162 ¶ 2; ECF

No. 49, PageID.221 ¶ 2) and submission of grievance appeals (*id.*, PageID.162 ¶ 5;

*id.*, PageID.221 ¶ 5), it does not claim that Plaintiff "cannot present facts essential

to justify [his] opposition[.]"  Fed. R. Civ. P. 56(d).

By comparison, Defendants' evidence – *i.e.*, Hawkins' affidavit (ECF No.

51-1, PageID.251 ¶ 5) and Plaintiff's MDOC Step III Grievance Report (ECF. No.

26-3, PageID.125) – supports the conclusion that Plaintiff did not appeal RGC-

3223 to Step II or Step III.

---

[10] Generally, "[a] party may not seek discovery from any source before the parties
have conferred as required by Rule 26(f)," but a party may do so "in a proceeding
exempted from initial disclosure under Rule 26(a)(1)(B) . . . ."  Fed. R. Civ. P.
26(d)(1).  This lawsuit is exempt from the initial disclosure requirement, because it
is "an action brought without an attorney by a person in the custody of the United
States, a state, or a state subdivision[.]"  Fed. R. Civ. P. 26(a)(1)(B)(iv).

[11] And as a practical matter, and from the Court's previous experience, such video
evidence, if it ever existed, is unlikely to have been retained for such a long period
– in this case 20 or 21 months (*i.e.*, as far back as September 2021 or October
2021) – in the ordinary course of business without a prior preservation request.

### iv.    Availability summary

In sum, Plaintiff argues that "MDOC officials prevented [him] from complying with the grievance process, which may have [led] to this inability to exhaust, and this 'external['] circumstance made administrative remedies unavailable . . . ."  (ECF No. 40, PageID.152 ¶ 5.)  Plaintiff claims Defendants did not follow MDOC PD 03.02.130; thus, their affirmative defense of exhaustion is "estopped due to their own misconduct . . . ."  (ECF No. 40, PageID.153 ¶ 6; *see also id*., PageID.155 ¶ 13; *id*., PageID.156 ¶ 15(3); *id*., PageID.160 ¶ 27.)

Yet, as set forth above, Plaintiff only mentions RGC-3223 in his response (ECF No. 40, PageID.162 ¶ 4; ECF No. 49, PageID.221 ¶ 4), and Grievance Coordinator Hawkins consistently attests that, "[w]hen Smith was at RGC, he filed only one Step I grievance [RGC-3223] . . . [,]" (ECF No. 51-1, PageID.251 ¶ 5). Even if Plaintiff was hindered in his efforts to secure a Step I grievance (from September 9, 2021 to October 1, 2021), Plaintiff completed the Step I grievance in RGC-3223, submitted it, and received the rejection (from October 1, 2021 to October 8, 2021), and the evidence supports the conclusion that Plaintiff did not appeal RGC-3223 to Step II or Step III.  Moreover, even though Plaintiff identifies movant Rebecca Byrne as located at DWH, movant Misty Miller as an L.P.N., and movant Adria Roach, R.N. as located at JCF (ECF No. 10, PageID.31-32 ¶¶ 9, 13, 25), their motion suggests they are (or were) each "healthcare staff at [RGC],"

26

(ECF No. 26, PageID.103); therefore, grievances at locations other than RGC do not appear to be relevant to Plaintiff's claims against these particular movants. As such, Plaintiff has not "demonstrated that a genuine issue of material fact exists as to whether [Defendants (*i.e.*, Byrne, Miller or Roach)] improperly prevented [Plaintiff] from exhausting his administrative remedies." *Himmelreich*, 766 F.3d at 578.

### c.  Continuing violation doctrine

Finally, in a single phrase, Plaintiff claims this is an "ongoing constitutional violation . . . ." (ECF No. 40, PageID.154 ¶ 10(3).) *See Ellis v. Vadlamudi*, 568 F. Supp. 2d 778, 784 (E.D. Mich. 2008) (Lawson, J.) ("a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it."). Relatedly, he contends he was "[n]ever required to file a grievance anew." (ECF No. 40, PageID.159 ¶ 25.)

However, mere mention of legal concepts in the most general way does not prove that they apply. "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'" *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v.*

*United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995) (citation omitted)).

**F.      Conclusion**

In his response, Plaintiff explains he is "a disabled American, with learning disabilities, and extreme health case [sic] serious medical needs."  (ECF No. 40, PageID.161.)  Plaintiff asks the Court to "proceed with pretrial matters[,]" "grant orders for <u>all</u> video[,]" and/or "excuse exhaustion based on facts . . . [,]" "set a trial date[,]" "grant orders for a hearing on this matter," – such as a hearing on exhaustion (ECF No. 40, PageID.159 ¶ 26) – and "show cause orders for all video in the housing units that Plaintiff . . . was in going back and [forth] from the hospitals," presumably to prove he "was not required to ask/request (5) five times for MDOC 03.02.130 grievances never provided, or to file a JCF Step I grievance anew, that staff th[war]ted to Step III[.]"  (*Id.*, PageID.160-161 [Conclusion and Relief Requested].)

More to the point, for the reasons set forth in greater detail above, the movants have satisfied their initial burden (Section II.E.2), and Plaintiff has not demonstrated the existence of a genuine issue of material fact (Section II.E.3). Accordingly, the Court should **GRANT** MDOC Defendants Byrne, Miller & Roach's motion for summary judgment on the basis of exhaustion (ECF No. 26).

28

If the Court agrees with this recommendation, then there will be fifteen remaining Defendants.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  June 21, 2023

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE