UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD LEE SMITH, JR.,

        Plaintiff,

v.

BISCHAN HASSUNIZADEH, *et al.*,

        Defendants.
_____/

Case No. 2:22-cv-11586
District Judge Nancy G. Edmunds
Magistrate Judge Anthony P. Patti

### REPORT AND RECOMMENDATION TO GRANT DEFENDANT LANDER'S MOTION TO DISMISS (ECF No. 47)

**I.   RECOMMENDATION**: The Court should **GRANT** Defendant Lander's March 24, 2023 motion to dismiss (ECF No. 47), because Plaintiff's complaint "fail[s] to state a claim [against Defendant Lander] upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

**II.   REPORT:**

    **A.   Background**

On July 8, 2022, while located at the Michigan Department of Corrections (MDOC) G. Robert Cotton Correctional Facility (JCF), Plaintiff Edward Lee Smith, Jr. initiated this lawsuit *in pro per* against multiple defendants. (ECF No. 1.) Plaintiff has kept the Court apprised of his address and is currently located at

1

the MDOC's Parnall Correctional Facility (SMT).  (ECF Nos. 7, 39; *see also* www.michigan.gov/corrections, "Offender Search.")

### B.     Fifteen Remaining Named Defendants

On August 24, 2022, Judge Edmunds entered an opinion and order, which dismissed the complaint against the MDOC but also provided Plaintiff "**sixty (60) days** from the date of this order to specify the names of the defendants he wishes to sue and to provide the Court with the addresses of these defendants."  (ECF No. 8, PageID.24 (emphasis in original).)

Plaintiff's timely response listed thirty Defendants.  (ECF Nos. 9, 10.)[1]  On October 18, 2022, Judge Edmunds entered another opinion and order, this time:

(1)  dismissing the complaint as to the ten Henry Ford Hospital Defendants (Hassunizadeh, Zeeshan, Zuger, Kazem, Chiu, Ivy, Lacey Wilson, Fulmerhouser, Bugbee, and Evans);

(2)  dismissing the complaint against two defendants (M. Caran and K. Chauris) because they had not been fully identified so that service could be effectuated; but,

(3)  directing the USMS to serve the complaint upon the eighteen remaining named Defendants (Byrne, Price, Miller, Erickson, Baghal, Efrusy, Rogers, Lander, Bahner (*i.e.*, Bhavsar), Sperling, Varney-Herr, Robert Lacy, Roach, Griffith, Yarid, Chester, Hill, and Remus).

---

[1] These responses are the same, except the latter contains a six-page "Attachment 1."  (*Compare* ECF No. 9, PageID.25-29; *with*, ECF No. 10, PageID.30-41.)  And, while they appear to list thirty-two (32) Defendants, Zuger is listed twice (*id.*, ¶¶ 3. 16) and one other paragraph seemingly describes the location(s) of certain Defendants (*see id.*, ¶ 17).

2

(ECF No. 11; *see also* ECF Nos. 22, 23, & 54.)

According to Plaintiff's list, those eighteen Defendants are associated with the MDOC's Duane Waters Health Center (DWH), the Charles E. Egeler Reception & Guidance Center (RGC), the Carson City Correctional Facility (DRF), and/or the G. Robert Cotton Correctional Facility (JCF). (ECF No. 10, PageID.31-32.) To date, ten defendants have appeared via counsel. (ECF Nos. 22, 23, 53, & 54 [Bahner (*i.e.*, Bhavsar), Chester, Hill, Robert Lacy, Yarid], 24 [Byrne, Miller, Roach], 27 & 28 [Sperling], 46 [Lander].) Eight defendants – *i.e.*, Price, Erickson, Baghal, Efrusy, Rogers, Varney-Herr, Griffith, & Remus – have yet to appear. (*See* ECF Nos. 29-30, 32-37, 38, 41, 50, 52.)

On July 11, 2023, Judge Edmunds granted Defendants Byrne, Miller, and Roach's motion for summary judgment (ECF Nos. 26, 58.) Therefore, fifteen named Defendants remain.

### C. Defendant Lander's Motion to Dismiss

Judge Edmunds has referred this case to me for pretrial matters. (ECF No. 42.) Currently before the Court is Defendant Ellen Lander, N.P.'s March 24, 2023 motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 47), as to which Plaintiff's response was due on April 24, 2023 (ECF No. 48). To date, Plaintiff has not filed a response. Thus, the motion is unopposed. *See* E.D. Mich. LR

3

7.1(c)(1) ("A respondent opposing a motion must file a response, including a brief and supporting documents then available.").

"Numerous cases have held that where a plaintiff fails to respond to a motion to dismiss, his or her claims are deemed abandoned." *Tranchmontagne v. United States Dep't of Hous. & Urb. Dev.*, No. 20-CV-12842, 2021 WL 2662283, at *6 (E.D. Mich. June 29, 2021) (Borman, J.) (referencing cases). *See also Williams v. Chase Bank*, No. 15-10565, 2015 WL 4600067, at *4 (E.D. Mich. July 29, 2015) (Lawson, J., *adopting report and recommendation of* Whalen, M.J.). However, "particularly where *pro se* litigants are concerned," district courts "must, at a minimum, examine the 12(b)(6) motion to dismiss prior to dismissing a complaint." *Visner v. Michigan State Police*, No. 19-11466, 2020 WL 525367, at *1 (E.D. Mich. Feb. 3, 2020) (Levy, J.) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). In *Carver*, the Sixth Circuit instructed:

> . . . a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden. We see no reason why the situation should be different in the context of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

*Carver*, 946 F.2d at 455.² Accordingly, notwithstanding Plaintiff having "waived opposition to the Defendants' motions to dismiss[,]" the Court "has undertaken an independent review of the motion[ ] to dismiss and the sufficiency of Plaintiff's complaint[.]" *Tranchmontagne*, 2021 WL 2662283, at *7.

### D.     Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

---

² *But see Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) ("where, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived.").

at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[3]

### E.  Analysis

#### 1.  The pleading

---

[3] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

### a. Statement of Facts

By way of background, Plaintiff is serving a sentence imposed in state court on May 10, 2021.  *See* Case No. 20-015538-FH (Berrien County).  Plaintiff alleges he "was diagnosed with having a weak heart." (ECF No. 1, PageID.3.)  He also alleges that, on June 6, 2021, he received "multiple diagnos[e]s[,]" including "asthma, COPD [chronic obstructive pulmonary disease], CHF [congestive heart failure], nonischemic cardiomyopathy, apical mural thromb[i], diabetes, HTN [hypertension], with hyperlip[i]d[e]mia[.]" (*Id.*)  It seems he had an ICD (implantable cardioverter-defibrillator) inserted on July 7, 2021. (*Id.*, PageID.3; *see also* ECF No. 10, PageID.40.)  Allegedly, it was taken out "shortly after . . . on approximately September 17, 2021, due to [him] having an infection and weak heart." (*Id.*, PageID.3.)  Plaintiff next reports being "sent from (DWH) to Henry Ford Hospital … where my defibrillator was taken out that caused infections." (*Id.*)[4]

Plaintiff also avers that "[t]he names of each defendant involved and how [they are] involved" are as follows:  (1) Bischan Hassunizadeh was the referring

---

[4] Throughout his pleading, Plaintiff refers to Attachments 1, 2, 3 & 4 (*see* ECF No. 1, PageID.3-5), but the complaint does not have any attachments.  Nonetheless, the Court acknowledges that, elsewhere in the record, Plaintiff has attached a six-page "Attachment 1," which describes the alleged events of July 8, 2021 to September 16, 2021 and also mentions some Defendants, *e.g.*, Price, Griffith, Roach, Robert Lacy, Baghal, Yard, and Remus. (*See* ECF No. 10, PageID.35-40.)

physician; and, (2-4) Rebecca Byrne, R.N., Lacey Wilson, N.P., and J. Fulmerhouser were "providers of [hi]s care during having surgery, prior to having surgery and then after having surgery." (*Id.*, PageID.5.) These Defendants are no longer parties. (*See* ECF Nos. 11, 58.)

      **b. Statement of claims**

As recounted in a previous report and recommendation (ECF No. 55, PageID.274-276), Plaintiff's statement of claims consists of the following eight (8) paragraphs:

> 1. My serious medical needs not being met has caused me physical injuries that violate[] my Eight[h] Amendment rights of the United States Constitution. The surgery defibrillator that was taken out that caused an infection and the doctor stating I need a defibrillator back in my chest alon[g] with the denial of [MDOC] and its contracted medical providers ignoring my prior pleas for help until my chest was infected shall warrant my claims of cruel and unusual punishment.
>
> 2. As Plaintiff my necessary medical care has been denied because the care the doctor's [sic] individually gave to me after concluding their examinations and given "MDOC" employees doctors['] orders, the contracted medical providers employees at DWH while I was calling for medical attention for my serious medical needs of my chest was hurting so bad it was to the point I could not breath[e], other prisoners w[ere] ye[l]ling to officers to come see me and call medical nurses or doctors to assist me.
>
> 3. The officer John Doe came and s[aw] me and told me to put on my cloth[e]s and . . . it could have clearly been seen that I could not [have] been able to do[] [it] by myself due to my failing health condition then at that time. The correctional officers had

8

been denying me serious medical needs for my necessary need medical care, that's needed still to this day based on MDOC rigid prison policy and ignoring doctors['] orders.

4. The PL[RA] shall not cause a problem about confidentiality as my claims [are] for punitive damage, compensatory damages . . . I can show that I was physically hurt – still [am] hurting and have the scares for life. I was immediately [sic] when medical nurses and doctors was alerted then when seeing me was wrapped up in [gauze], ban[d-]aids put on me due to bad infection surrounding the area of my recently had surgery and defibrillator was then ordered to be immediately taken out after[.] I've prior suffered long periods of time in pain.

5. The defendants in this complaint at time[s] ignored and at times waited for hours while I was needing help and told me to . . . "put your f[-]ing blues on[.]" [T]hat was very rude and that could have got a person upset that had my type of surgery and was g[iven] doctor orders not to get upset [be]cause I could have died if [I] did. The officers w[ere] suppose[d] to watch o[ver] me by doing rounds every half hour but did not do rounds every half hour as was called for doctor did order[]. I asked for help to write grievance but got none.

6. The officers at "MDOC" [DRF] . . . only did rounds every 3 to 4 hours, and (DWH) which for all the above reasons mentioned the [MDOC] medical providers through Corizon in concert with prison officials violated constitutional standards, from a state and federal standpoint. My rights violated – violated Michigan Constitution for the "MDOC" contracted medical providers not properly screening my health problems and poorly administering prison health services, the prisons and medical agencies denied and unreasonably delayed my access to proper medical care then and still to this day in violation of the Eight[h] Amendment and they still are because:

9

7. The defibrillator was taken out that caused the infection from the first surgery that prior failed which rendered me having life threaten circumstances experienced causing me psychological new conditions. The professional treatment g[iven] that caused my life threatening circumstances make[s] me now fear for my life and refuse to get any other offered surgery done within my having to live in a prison setting due to my prior experience with "MDOC" medical service Corizon contracted employees for prisons – prisoners medical serious health care needs. The unknown Mr. John Doe, who is [an] African American prison guard who made the call to medical that was very rude when I was immediately taken back to hospital[,] acted in complete "deliberat[e] indifference" to my failed heart surgery needs by not immediately calling for medical help until my n[ei]ghboring peer-prisoners started scre[a]ming for guards to come assist me due to my failing health clearly seen by them that happen then. My health failing was clearly being ignored then that placed my life in danger then that now cause[s] me to fear for my life due to [MDOC] and their medical contracted providers not being able to properly provide for my serious medical needs then and now at this time.

8. Recently I was threaten[ed] to take medication for "scabies" without being given any information [in advance] about the dangers could be when taken such medication . . . . I wanted to ask about the medication but was told I would be placed in (JCF) segregation. Interestingly, prior to tak[ing] medication[,] I s[aw] another prisoner refused only to take the medication and get shot with a taser stun[] gun which deter[r]ed me from asking any questions or refusing to take medication. I take insulin[] twice a day before I eat breakf[a]st and dinner, and I [am] suppose[d] to take insulin[] three times a day after each meal. I was not told that prisoners with immune systems [that are] compromised should not take medication I was forced to take until after.

(ECF No. 1, PageID.3, 6-9.)

    c.  **Relief**

  Plaintiff wants the Court "to rule that [MDOC] is unable to provide for [his] medical serious needs now, has been in the past, and order them to pay monetary damages in punitive, compensatory, in a[n] amount that has been paid to prisoners and citizens prior but in excess of what was paid out prior to deter the actions of those involved and those to come employees of "MDOC," and contracted medical providers." (ECF No. 1, PageID.3-4.) Plaintiff also wants the Court to "[r]ule that the not annually checking the health of [his] weak heart after such surgery is deliberately ignoring [his] serious medical needs," to "appoint counsel for trial urgently[,]" and to "[d]o what this Court deems fit, as we can't put [a] price on life." (*Id*., PageID.4.)

    2.  **The Motion**

  Defendant Lander describes herself as "a licensed nurse practitioner in the State of Michigan who was employed during the time in question as a contractor for Emergency Medical Consultants, PC." (ECF No. 47, PageID.188 ¶ 3.) She claims to have seen patients "at the Duane Waters Health Center ('DWHC') on a consult basis under the supervision of Dr. Gregory Fuller." (*Id*.) According to Lander, "[t]he DWHC is operated by the Michigan Department of Corrections in Jackson, MI." (*Id*.)

11

Although Plaintiff's complaint makes various references to DWH, as well as "contracted medical providers," or "medical service Corizon contracted employees," or "medical contracted providers," (*see* ECF No. 1, PageID.3-4, 6-9 ¶¶ 1-2, 6-7), Defendant Lander's motion accurately points out:

- "[T]he Complaint is devoid of <u>any</u> reference to NP Lander's involvement." (ECF No. 47, ¶ 4 (emphasis in original).)

- "Plaintiff has failed to set forth[] any facts or claims concerning NP Lander's involvement." (*Id.*, ¶ 5.)

- "Plaintiff does not mention NP Landers[.]" (*Id.*)

- "Plaintiff has not plead sufficient facts to support any claims against her." (*Id.*, ¶ 6.)

- "Plaintiff failed to plead **<u>any</u>** facts whatsoever to support that NP Lander allegedly caused the deprivation of Plaintiff's constitutional rights, or that she was even involved with Plaintiff's medical care." (*Id.*, ¶ 12 (emphases in original).)

(ECF No. 47, PageID.188-192.)  In addition, by failing to file a response, Plaintiff has failed to rebut Defendant Lander's observations about Plaintiff's complaint.

### F. Conclusion

For the reasons set forth above, Plaintiff's complaint "fail[s] to state a claim [against Defendant Lander] upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).  Accordingly, the Court should **GRANT** Defendant Lander's motion to dismiss (ECF No. 47).  If the Court agrees with this recommendation, then there will be fourteen remaining named Defendants.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: September 5, 2023

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE